**IN THE UNITED STATES DISTRICT COURT
FOR THENORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MAJED MURAD and REDMON CONSTRUCTION, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 14 CV 07593 |
| RAYMOND JAMES BANK, | ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) ) | |

## ORDER

For the reasons set forth in the Statement below, the Court grants the motion of defendant Raymond James Bank ("RJB"), Dkt. 5, to dismiss the plaintiffs' Complaint, Dkt. 1. The plaintiffs are granted leave to amend on or before June 19, 2015. Absent timely amendment, judgment for RJB will be entered and the case will be terminated.

## STATEMENT

This case concerns a piece of residential property in Bloomingdale, Illinois, which RJB purchased in a foreclosure sale in April of 2014. *See* RJB Exs. 3-4, Dkts. 6-4 and 6-5. The plaintiffs filed this two-count action against RJB on September 29, 2014, alleging that in January and November of 2013 (after RJB obtained a Judgment for Foreclosure, but before it purchased the property), plaintiff Murad had entered into lease and purchase agreements with the former owner of the property, Samir Fakhouri. *Id*.; Compl., Dkt. 1, ¶¶ 12-13, 20, 25-26. The Complaint further alleges that plaintiff Redmon Construction, Inc. ("Redmon") has been owed over $78,000 since June 30, 2014, for "labor, services, use of equipment and material used for various repair [sic] in the subject property." *Id*. at ¶¶ 2, 14, 28. Presumably (though the complaint does not so allege), Redmon provided those repairs pursuant to an agreement with Murad. Notably, however, the Complaint does not allege that Redmon was a party to either the lease or purchase agreement between Murad and Fakhouri. Nevertheless, in Count I of the Complaint, both plaintiffs seek a declaratory judgment that, pursuant to 735 ILCS 5/9-207.5, RJB "must honor the full term of the Lease," *id*. at ¶ 22; and in Count II, seek "specific performance" of the purchase agreement, or alternatively, "should Defendant not be required to comply with the terms of the purchase contract," Redmon "requests a Judgment for $78,619.42, plus interest at 18% per annum," for the foregoing repairs. *Id*. at ¶ 28. Jurisdiction is based on diversity pursuant to 28 U.S.C. § 1332. *Id*. at ¶¶ 6, 10.

RJB now seeks dismissal of the plaintiffs' Complaint on three grounds: (1) that Count II was adjudicated in the prior foreclosure action and is now barred by res judicata, and that its resulting dismissal (says RJB) would deprive the Court of diversity jurisdiction, requiring "the entire action" to be dismissed pursuant to Fed. R. Civ. P. 12(b)(1); (2) that "Plaintiffs have failed

to join a necessary party," whose joinder would again "deprive the Court of diversity jurisdiction," requiring dismissal pursuant to Fed. R. Civ. P. 12(b)(7); and (3) that both Counts of the Complaint "are substantially insufficient under Federal Rule of Civil Procedure 8," requiring dismissal pursuant to Fed. R. Civ. P. 12(b)(6). *See* RJB Mem., Dkt. 6, at 1-2, 5-6. As explained below, the Court agrees that the Complaint fails to allege a cognizable claim and should therefore be dismissed in its entirety. Because the Complaint is confusingly drafted, however, and because the plaintiffs have altered their theories of liability, the Court's route to this conclusion differs substantially from that taken by RJB.

**I.       Res Judicata and Subject Matter Jurisdiction**

The Court begins with RJB's res judicata defense against Count II of the plaintiffs' Complaint because, according to RJB, this defense implicates jurisdictional concerns. This defense relies on the May 13, 2014 "Order Confirming Sale" which concluded RJB's foreclosure action regarding the Bloomingdale property. *See* Def. Ex. 4, Dkt. 6-4.[1] RJB argues that this Order bars any claims in Count II that predated May 13, 2014, because they were "adjudicated" at that time by the foregoing Order. *See* RJB Mem., Dkt. 6, at 4-5; RJB Reply, Dkt. 11, at 2. From there, RJB reasons that "the entire action would also need to be dismissed pursuant to Rule 12(b)(1), as the Court would no longer have diversity jurisdiction" in the "absence" of Count II, which "contains the only claim for monetary damages in the amount required by 28 U.S.C. § 1332." RJB Mem., Dkt. 6, at 5. But the argument relies on a faulty premise—namely, that the dismissal of Count II would deprive the Court of diversity jurisdiction.

"It is well established that the requirements for diversity jurisdiction must be satisfied only at the time a suit is filed." *Grinnell Mut. Reinsurance Co. v. Shierk*, 121 F.3d 1114, 1116 (7th Cir. 1997). So, "if the amount in controversy exceeds the jurisdictional amount when a suit is filed in federal court, the fact that subsequent events reduce the total amount in controversy will not divest the court of diversity jurisdiction." *Id*. Subsequent dismissal of the only claim supporting the jurisdictional amount (here, Count II), based on the successful assertion of an affirmative defense (such as res judicata), therefore has no jurisdictional effect. *Cf. Tropp v. Western-Southern Life Ins. Co.*, 381 F.3d 591, 595 and n.2. (7th Cir. 2004) (jurisdictional amount in controversy was established by claim for injunctive relief in original complaint that plaintiff "subsequently chose not to purse" in amended complaint).

---

[1] Consistent with the standard required under Rule 12(b)(6), the Court assumes the truth of the "well-pleaded factual allegations" in the plaintiffs' Complaint, as well as "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (quoting *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). Public court records—such as those filed in the prior foreclosure action at issue here and now attached to RJB's Memorandum, *see* RJB Exs. 1-4, Dkts. 6-1 to 6-4—are common candidates for such judicial notice. *See Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012) (court took proper judicial notice of "the dates on which certain actions were taken or were required to be taken in the earlier state-court litigation–facts readily ascertainable from the public court record and not subject to reasonable dispute"). As these documents are not subject to reasonable dispute (indeed, the plaintiffs' do not dispute them), the Court considers them also.

Similarly misguided is the argument in RJB's Reply that "the Complaint in its current form is factually insufficient and fails to demonstrate that this Court has subject-matter jurisdiction" because Count II fails to plead facts "necessary to determine if any amounts accrued prior to May 13, 2014, as those amounts would have been adjudicated in the foreclosure action and would not be recoverable in this matter." *See* RJB Reply, Dkt. 11, at 2. According to RJB, the plaintiffs must allege "the dates on which specific repairs were made and the monetary values that attached to each repair" in order to demonstrate that such amounts ***are not*** barred by res judicata and thus support the jurisdictional "amount in controversy." *Id*. But again, even a proper dismissal of Count II as barred by res judicata would not negate the diversity jurisdiction with which this Court is already vested.

Nor is it a plaintiff's burden to plead facts necessary to overcome a res judicata defense, as RJB argues here. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("a complaint need not anticipate and overcome affirmative defenses"). While it is true that a res judicata defense "provides a proper basis for a Rule 12(b)(6) motion" where the defense "is disclosed in the complaint," *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008), as RJB concedes, its res judicata defense is not so disclosed here, because the plaintiffs' Complaint lacks the dates "necessary to determine if any amounts accrued prior to" the May 13, 2014 Order on which RJB relies. *See* RJB Reply, Dkt. 11, at 2.[2] In such a case, the proper course is to assert the defense in an answer, not a motion to dismiss under Rule 12(b)(6). *See Oliver*, 547 F.3d at 878 ("res judicata is not one of the affirmative defenses that Rule 12(b) permits to be made by motion rather than in the answer to the complaint"); *Sidney Hillman*, 782 F.3d at 928 ("we have cautioned that this 'irregular' approach [of a Rule 12(b)(6) dismissal based on an affirmative defense] is appropriate 'only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense'" (quoting *Chi Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014)). RJB's argument that the Complaint here fails to provide the detail necessary to substantiate its res judicata defense thus demonstrates a deficiency not in the Complaint, but in RJB's Rule 12(b)(6) motion.

There are substantive flaws in RJB's res judicata defense as well. The defense posits that "Murad's non-record interest was adjudicated when the Property was sold at the foreclosure sale" that was ordered in the foreclosure action. *See* RJB Reply, Dkt. 11, at 1. The plaintiffs have made clear, however, that they no longer assert a "non-record interest" in the property.[3] Instead, they contend that the "issue in this case is whether the new owner of the subject house, Defendant herein, should honor the existing Lease" and "be responsible for the repairs performed

---

[2] RJB presumably makes this concession because "Illinois courts consider the facts 'as they exist at the time of judgment to determine whether res judicata bars a subsequent action.'" *Arlin-Golf, LLC v. Village of Arlington Heights*, 631 F.3d 818, 822 (7th Cir. 2011) (brackets omitted, quoting *Altair Corp. v. Grand Premier Tr. & Inv., Inc.*, 318 Ill. App. 3d 57, 62, 742 N.E.2d 351, 355 (2d Dist. 2000)).

[3] To the extent RJB's res judicata defense attacks "Murad's attempt to enforce a purchase agreement relative to the Property," RJB Reply, Dkt. 11, at 1, as RJB acknowledges, Murad's Opposition made no attempt to support this claim for "specific performance," *see* Compl., Dkt. 1 ¶ 27, and thus appears to have "conceded that point." *See* RJB Reply, Dkt. 11, at 1.

on its house," either contractually under the foregoing lease or under a theory of quantum meruit. *See* Pltfs. Opp., Dkt. 10, at 5-7. Neither of these claims is barred by the prior foreclosure action.

As to the first (the claim that RJB must honor the lease Murad executed with the former property owner), as RJB acknowledges, this claim is preserved (within certain constraints discussed below) by Illinois statute. *See* 735 ILCS 5/9-207.5(a) ("the purchaser at a judicial sale . . . may terminate a bona fide lease, as defined in Section 15-1224 of this Code, only . . . at the end of the term of the bona fide lease"); RJB Mem., Dkt. 6, at 8-9 (citing 735 ILCS 5/9-207.5(a) and 5/15-1224). The question as to this claim, therefore, is not whether it is barred by res judicata as a result of the prior adjudication, but whether the lease Murad entered into with the former property owner meets the requirements of a "bona fide lease" under 735 ILCS 5/15-1224.

As to the plaintiffs' claims for amounts allegedly due under this lease, or alternatively under an "unjust enrichment" or "quantum meruit" theory, both the Seventh Circuit and Illinois courts have repeatedly recognized that a mortgage foreclosure action does not bar subsequent claims related to the foreclosed property that nevertheless rest on an agreement distinct from, or upon facts unrelated to the default of, the mortgage that prompted the prior foreclosure action.[4] Such courts have thus sustained over res judicata defenses claims for breach of an agreement separate from the foreclosed mortgage, and for unjust enrichment, such as the plaintiffs have attempted (albeit unsuccessfully, as discussed below) to allege here. *See supra* note 4.

## II.  Declaratory Judgment (Count I)

Having disposed of RJB's jurisdictional and res judicata arguments, the Court turns to the merits of the plaintiffs' claims, beginning with their request in Count I for a declaratory judgment that RJB "is legally obligated to abide by the terms of the Lease." *See* Compl., Dkt. 1, at ¶¶ 20-23. As will be seen, the lease has expired, but the plaintiffs' claim to enforce the lease in Count I is not moot because the plaintiffs premise their demand for reimbursement for repairs to the Bloomingdale property (set forth, confusingly, in Count II of the Complaint) on provisions of the lease agreement (or, alternatively, on quantum meruit). *See* Pltfs. Opp., Dkt. 10, at 5-6.

---

[4] *See*, *e.g.*, *Freedom Mort. Corp. v. Burnham Mort., Inc.* 569 F.3d 667, 672 (7th Cir. 2009) (observing that the "questions litigated in a mortgage foreclosure action are (a) did the borrower make the promised payments?, and, if not, then (b) how much is the collateral worth?" and holding that "distinct" questions are not barred); *ABN AMRO Mort. Grp., Inc. v. McGahan*, 237 Ill. 2d 526, 537, 931 N.E.2d 1190, 1197 (2010) ("a mortgage foreclosure proceeding does not bind the whole world") (citing cases); *LSREF2 Nova Invs. III, LLC v. Coleman*, 2014 IL App (1st) 140184, ¶¶ 13-15, --- N.E.3d ---, 2014 WL 7243264, *5 (Dec. 19, 2014) ("the circuit court entered only an *in rem* deficiency" which "adjudicated only the rights and interest in the property that was the subject of the mortgage") (citing *Turczak v. First Am. Bank*, 2013 IL App (1st) 12964, ¶¶ 31-33, 997 N.E.2d 996, 1001-002; *LP XXVI, LLC v. Goldstein*, 349 Ill. App. 3d 237, 241-42, 811 N.E.2d 286, 289-90 (2d Dist. 2004)); *Eighteen Invs,, Inc. v. NationsCredit Fin. Servs. Corp.*, 376 Ill. App. 3d 527, 876 N.E.2d 1096 (1st Dist. 2007) (claims seeking rescission and declaratory judgment relating to judicial sale ordered in prior foreclosure action were barred by res judicata, whereas unjust enrichment claim regarding defendant's retention of proceeds from that sale was instead resolved on the merits).

Both sides acknowledge that the plaintiffs' claim to enforce the lease looks to 735 ILCS 5/15-1224 to determine whether the lease agreement between Murad and the former property owner was a "bona fide lease," such that 735 ILCS 5/9-207.5 would allow it to be terminated only "at the end of the term" and "by no less than 90 days' written notice." *See* RJB Mem., Dkt. 6, at 8-9; Pltfs. Opp., Dkt. 10, at 6. Both sides also agree that under § 5/15-1224(b), a bona fide lease "for a term exceeding one year that is entered into or renewed after the date of the filing of the lis pendens . . . and before the date of the judicial sale of the residential real estate" (as here) "shall be deemed to be a bona fide lease for a term of one year." *See* Pltfs. Opp., Dkt. 10, at 6; RJB Reply, Dkt. 11, at 3. And both sides also agree (or at least no one challenges for purposes of this motion) that the lease between Murad and the former property owner meets these requirements, and is therefore "deemed to be a bona fide lease for a term of one year." *Id.* The parties' only disagreement is when that one-year term runs.

The plaintiffs argue that the lease between Murad and the former property owner—a three-year lease expiring in January 2016—should be deemed a one-year lease expiring a year after the May 13, 2014, Order approving the judicial sale of the Bloomingdale property, thus expiring on May 12, 2015. *See* Pltfs. Opp., Dkt. 10, at 6. RJB, on the other hand, argues that "the clear language of the statute establishes that the lease is only considered a bona fide lease for one year from the date that it is entered into, which, in the case at bar, would mean that it expired on January 2, 2014." RJB Reply, Dkt. 11, at 4. In fact, the lease attached as Exhibit A to the Complaint provides for a term "beginning February 1, 2013 and ending January 31, 2016," Pltfs. Ex. A, Dkt. 1-1,[5] which if deemed a one-year term, would expire in January of 2014 (it is unnecessary to decide here whether § 5/15-1224(b) requires the one-year term to run from the execution date, as RJB argues, or the start of the lease term). But RJB's argument overlooks that 735 ILCS 5/9-207.5 allows for termination of a bona fide lease "by no less than 90 days' written notice." While no party has addressed this "90 day notice requirement" of § 5/9-207.5, the Complaint suggests that such notice came no earlier than July 8, 2014, meaning that the lease could be terminated no earlier than October 6, 2014.[6]

Thus, according to all parties' calculations, Murad's lease on the Bloomingdale property has now expired, *see* Pltfs. Opp, Dkt. 10, at 6; RJB Reply, Dkt. 11, at 4, rendering moot his request for a declaration that RJB "must honor the full term of the Lease," Compl., Dkt. 1, ¶ 22, at least to the extent that the claim asserts a right to continued occupancy of the premises. But that is only one possible remedy available under the lease. To the extent the plaintiffs also seek a

---

[5] "To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence." *Phillips*, 714 F.3d at 1020.

[6] The Court notes the following allegations bearing on this 90-day notice requirement: (1) on July 8, 2014, RJB "sent a letter to Plaintiff explaining that it is now the owner of the property and sought possession of it," Dkt. 1, ¶ 15; (2) the plaintiff was then served on August 8, 2014, with "a 30-day Notice of Eviction," *id.* at ¶ 16; and (3) the plaintiff was then "served with a Notice seeking eviction by October 1, 2014." *Id*. The Court concludes based on these allegations that the 90-day notice requirement of § 5/9-207.5 was met no earlier than July 8, 2014, allowing for termination of the lease no earlier than October 6, 2014 (which is largely consistent with RJB's alleged "Notice seeking eviction by October 1, 2014," *see* Dkt. 1, ¶ 16).

declaration that RJB is liable under the lease for the costs of repairs made to the Bloomingdale property (because RJB is "legally obligated to abide by the terms of the Lease," Compl., Dkt. 1, ¶ 23), the declaratory judgment claim in Count I is not moot; rather, it is indistinguishable from the "breach of contract" claim in Count II. *See* Compl. Dkt 1, ¶ 28. This is because, in their Opposition to RJB's motion, the plaintiffs premise RJB's liability for the cost of such repairs not on a breach of the purchase agreement but on the lease agreement (or, alternatively, quantum meruit). *See* Opp., Dkt. 10, at 5 ("Defendant herein, should honor the existing Lease, Exhibit A, and be responsible for the repairs performed on its house via contractual obligation or quantum meruit."); *id.* at 6 ("Section #21 of the Lease requires the Landlord to do all repairs.").[7]

The plaintiffs' "breach of contract" claim in Count II is thus a claim under the lease agreement as well, and indistinguishable from their "declaratory judgment" claim in Count I. Both "Counts" are premised on the same legal theory—namely, that RJB "is legally obligated to abide by the terms of the Lease," *see* Dkt. 1, ¶ 23—and the question of when that lease expired therefore applies equally to both Counts. As the Court has concluded above that the lease expired (for purposes of RJB's motion to dismiss) no earlier than October 6, 2014, the Court now considers whether, assuming that expiration date, the plaintiffs have adequately alleged in Count II that RJB breached the lease by not paying for the repairs to the Bloomingdale property.

### III.     Breach of Contract/Quantum Meruit (Count II)

Other than the jurisdictional and res judicata arguments addressed above, RJB mounts two additional challenges to Count II of the plaintiffs' Complaint: (1) that it fails to join a necessary party—Fakhouri, the former property owner—who would (again) "deprive the Court of diversity jurisdiction," RJB Mem., Dkt. 6, at 5-7; and (2) that it fails to allege a cognizable claim. *Id*. at 10-11; RJB Reply, Dkt. 11, at 4. The Court agrees with the second argument.

As to the first—that the plaintiffs failed to join a necessary party who would, if joined, destroy diversity and thus deprive the Court of jurisdiction—the argument wrongly reasons that the former owner of the Bloomingdale property is a necessary party because he was "assumedly" the counterpart to any agreement sought to be enforced in Count II. *See* RJB Mem., Dkt. 6, at 3, 5; RJB Reply, Dkt. 11, at 2-3. Again, although Count II originally sought "specific performance" of the purchase agreement between Murad and the former property owner, *see* Compl., Dkt. 1, ¶ 27, the plaintiffs have since abandoned that claim. *See supra* notes 3 and 7. And to the extent RJB assumes that the plaintiffs' breach of contract claim in Count II is similarly predicated on an agreement between Murad and/or Redmon and the former property owner, *see* RJB Mem., Dkt. 6, at 3, 5, the plaintiffs' Opposition makes clear that this claim is instead based upon the lease agreement in which RJB became Murad's counterpart, pursuant to Illinois statute, when it purchased the property in May of 2014. *See* Pltfs. Opp., Dkt. 10, at 6. The former property owner, Fakhouri, is therefore not a necessary party here.

---

[7] Although Count II alternatively "seeks specific performance" of Murad's "purchase agreement" with the former owner of the Bloomingdale property, as noted above, the plaintiffs have abandoned that claim. *See supra* note 3. The Court discerns no obvious basis on which RJB could be liable to the plaintiffs under the purchase agreement between Murad and the former property owner, but regardless, the plaintiffs have forfeited any argument in that regard.

This leaves only the core question of whether Count II of the plaintiffs' Complaint alleges a cognizable claim for reimbursement of the costs allegedly incurred by Redmon in repairing the Bloomingdale property. The plaintiffs advance two theories to support such a claim—breach of contract and quantum meruit—and both are unavailing.

The plaintiffs' breach of contract theory, as modified by their brief, argues that RJB assumed the role of landlord under the lease it inherited, and that Section 21 of that lease required RJB in this new capacity "to do all repairs." *See* Pltfs. Opp., Dkt. 10, at 6. As an initial matter, RJB complains that in so modifying their breach of contract theory the plaintiffs are attempting "to depart from the allegations of the Complaint." *See* RJB Reply, Dkt. 11, at 4. But the designation of "counts" does not necessarily delimit the contours of a legal theory; and as explained above, Count I, which *is* nominally predicated on the lease agreement, subsumes the claim for reimbursement of repair costs under the lease agreement. Seventh Circuit precedent, moreover, allows a plaintiff opposing a motion to dismiss under Rule 12(b)(6) to "elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky*, 675 F.3d at 745, n.1. That the plaintiffs appear to "depart" from the allegations of Count II, then, is both illusory and inconsequential.[8]

Still, this latitude is not enough to save the plaintiffs' breach of contract claim here, because the lease provision on which they rely (Section 21) does not support it. Section 21 of Murad's Residential Lease Agreement provides: "Upon being notified by Tenants that there is some building defect in which is [sic] hazardous to health, life, or safety, ***Owners shall undertake repairs as soon as possible***. . . . Owner agrees to keep Tenants informed about the progress of work. ***This includes remodeling and updating of the property***." *See* Pltfs. Ex. A, Dkt. 1-1, at § 21 (emphasis added). Section 20 similarly requires a tenant "to notify Landlord immediately" of water damage and "upon first discovering any signs of serious building problems such as foundation cracks, a tilting porch, a crack in plaster, buckling drywall or siding, a spongy floor, a leaky water heater, etc." *Id*. at § 20. Contrary to these provisions, the plaintiffs here do not allege that they "notified" the owner of any defect, much less a "serious building problem" or one that was "hazardous to health, life, or safety," in order to allow the owner to arrange for repairs (as opposed to plaintiffs performing the repairs themselves and suing over them later). Absent the required notice, no duty to repair arose under the lease agreement. The plaintiffs' breach of contract claim is therefore facially deficient.

Alternatively, Redmon turns to "quantum meruit." *See* Plaintiffs' Opp., Dkt. 10, at 5; Compl., Dkt. 1, ¶¶ 28-29. But this theory, too, is unsupported. Both quantum meruit and the

---

[8] To the extent that the Complaint is premised on a breach of contract claim (whether that contract is the lease agreement or the purchase agreement), there is an obvious issue as to Redmon's standing to assert rights conferred by a contract to which it was not a party. RJB, however, fails to contest Redmon's standing in this regard. And because the Court concludes that the claim for breach of the lease agreement fails in any event, the matter is of no import at present. But in the event the plaintiffs seek to amend their Complaint, this question may be germane. The plaintiffs would therefore be well advised to focus attention on which plaintiff is entitled to assert rights under the lease, which plaintiffs are seeking reimbursement for the subject repairs, and under what theory.

related theory of unjust enrichment "are based on a contract implied in law," and both require the plaintiff to show that "valuable services or materials were furnished by the plaintiff" and "received by the defendant, under circumstances which would make it unjust for the defendant to retain the benefit without paying." *See Stark Excavating, Inc. v. Carter Constr. Servs., Inc.*, 2012 IL App (4th) 110357, ¶ 37, 967 N.E.2d 465, 474 (quoting *Hayes Mech., Inc. v. First Indus., L.P.*, 351 Ill. App. 3d 1, 9, 812 N.E.2d 419, 426 (1st Dist. 2004)). While these theories differ in their measure of recovery—the measure for quantum meruit "is the reasonable value of the work and material provided," whereas unjust enrichment "focuses on the benefit received and retained as a result of the improvement provided by the contractor," *id.*—the problem with both theories here is their mutual requirement of "circumstances which would make it unjust for the defendant to retain the benefit without paying." *Id.*; *see also Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (unjust enrichment claim under Illinois law requires "that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience" (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672, 679 (1989)); *Stevens v. Interactive Fin. Advisors, Inc.*, No. 11 C 2223, 2015 WL 791384, *16 (N.D. Ill. Feb. 24, 2015) (same). Redmon has made no such allegation.

Instead, Redmon alleges merely that it "completed" various repairs to the property by June 30, 2014, and the amount "owed" for those repairs. *See* Compl., Dkt. 1, ¶¶ 2, 14, 28. Both Illinois courts and courts in this district applying Illinois law have repeatedly recognized that such allegations are insufficient to sustain a claim for quantum meruit or unjust enrichment because "[t]he mere fact that a person benefits another is not itself sufficient to require the other to make restitution therefore." *Spitz v. Proven Winners N. Am., LLC*, 969 F. Supp. 2d 994, 1008 (N.D. Ill. 2013) (quoting *Hayes*, 351 Ill. App. 3d at 9, 812 N.E.2d at 426), *aff'd on other grounds*, 759 F.3d 724 (7th Cir. 2014); *Saletech, LLC v. East Balt, Inc.*, 2014 IL App (1st) 132639, ¶ 36, 20 N.E.3d 796, 808 (same). Indeed, actual "knowledge that the work is being performed is insufficient," *C. Szabo Contracting, Inc. v. Lorig Constr. Co.*, 2014 IL App (2d) 131328, ¶ 33, 19 N.E.3d 638, 647, and Redmon has failed to allege even that.

Rather, Illinois law requires a plaintiff seeking recovery in quantum meruit or unjust enrichment to allege facts demonstrating that the defendant's retention of the conferred benefit would be unjust, such as the defendant having requested the work and then refused to pay for it, somehow enticed the work or suggested that it would pay for it, or demanded other work that rendered necessary the additional work sued over. *See, e.g., id.* at ¶ 42, 19 N.E.3d at 649 (sustaining unjust enrichment claim where defendant "received the exact performance that it requested and agreed to pay for, and [did] not dispute that it paid no one for the work"); *Stark Excavating*, 2012 IL App (4th), at ¶ 39, 967 N.E.2d at 474 (denying summary judgment on quantum meruit and unjust enrichment claims where there was evidence that the benefit at issue was rendered necessary by other work demanded by the defendant). Absent any such allegations demonstrating that RJB's retention of the repairs to the Bloomingdale property would be unjust, Redmon's quantum meruit claim seeking reimbursement for that work is likewise facially deficient.[9]

---

[9] In this regard, while non-precedential, the Court also finds persuasive a recent unpublished Illinois decision involving facts similar to those alleged here, affirming the dismissal of an unjust enrichment claim by a lessee who made improvements to property he

* * *

For all of the foregoing reasons, RJB's Motion to Dismiss the plaintiffs' Complaint, Dkt. 5, is granted. The dismissal is without prejudice; to the extent the plaintiffs can allege, consistent with the requirements of Rule 11, facts that would plausibly establish an entitlement to reimbursement for repair costs (either under the terms of the lease agreement or another theory, such as quantum meruit or unjust enrichment), they have leave to do so on or before June 19, 2015.

Date: May 22, 2015

John J. Tharp, Jr.
United States District Judge

---

attempted to purchase, but which was subject to a superior mortgage that was later foreclosed. *See Deutsche Bank Nat'l Tr. Co. v. Mitacek*, 2013 IL App (1st) 121487-U, ¶ 30, 2013 WL 1858425, *8 (May 1, 2013) (unpublished) (plaintiff "failed to plead sufficient facts supporting an allegation that Deutsche Bank's retention of his improvements to the property would be unjust and violate the fundamental principles of justice, equity and good conscience"). As in *Deutsche Bank*, Redmon has failed to allege sufficient facts supporting an allegation that RJB's retention of the improvements to the Bloomingdale property would be unjust.